Good morning, your honors. May it please the court, my name is Martin Shainbaum, and I represent the appellant taxpayer. There are two dockets here, 07-16617, 08-16062. The essence of this case is an IRS summons enforcement of three summonses, and also a subsequent contempt hearing. The question here is, first of all, basically, is the IRS summonses valid? The IRS has broad powers. It takes a slight burden to have, make a case for enforcement of the summons. However, to meet the Powell standards, the evidence has to be credible. What usually happens, as in this case, the examining agent made a declaration, in fact, two declarations, saw a position that those declarations are not credible, that the purpose of this summons, while the IRS can have a dual purpose, one for civil and one for criminal, and pursue that, nevertheless, you need to be transparent. You need to be honest. This court has seen this kind of an issue in the context of the SEC in the Stringer case. In that case, the attorney asked the SEC, while conducting civil, are you really contemplating a criminal case? The SEC said, go talk to the United States attorney, but subsequently, during the deposition period, failed to exercise the Fifth Amendment privilege. In this case, the Fifth Amendment was exercised. So our first position is the summonses are not enforceable because they're not based on credible evidence. The second position here is, assuming arguendo, that these summonses are enforceable, they've been fully complied with. One, information has been turned over, specifically, questions have been answered, and the problem that arose is a contempt because the appellant taxpayer invoked the Fifth Amendment. I believe in the record is a transcript of the district judge holding the appellant in contempt for not answering certain questions. Basically, the questions that were not answered were ‑‑ And the result of that was an interesting telephone call by the district court, sui sponte, to a foreign person asking, look, are you going to send the documents or turn them over? And that person answered, I'm not going to cooperate, I'm not going to send the documents, and hung up on the district judge. Subsequently, the district judge asked the appellant taxpayer, are you going to get some of the foreign documents and also explain, if you want to cure this contempt, what about this manna from heaven? Well, if you look at the total circumstances here, the filing of a complaint for an injunction with allegations that look quite similar, and I'm sure this court has seen indictments for tax evasion, tax criminal acts, this complaint, but for the fact it was labeled civil complaint, could easily be a grand jury indictment. Further, there was a notice of deficiency issued, which alleged the civil fraud penalty and also undermined the purpose of the summons. IRS had alleged, we need this information because we can't make a determination. Well, the notice of deficiency made a substantial determination. Not only that, the United States has such confidence they asserted the civil fraud penalty, and as the law provides, the civil fraud penalty, the government has the burden of proof to sustain that penalty by clear and convincing evidence. That kind of stand is just a notch below proving a criminal case beyond a reasonable doubt. I'm not still, I'm not sure why, what is it, why do you want us to set aside the contempt? Because. What do you want us to do? All right. What I would like to have done here is, one, have a determination that the summonses are invalid and not enforceable. If the summonses are valid and enforceable, they've been fully complied with. There is no contempt because the contempt was entered because the taxpayer appellant invoked the Fifth Amendment. Given the totality of the circumstances, given the clear and present danger of a criminal case being developed through the technique that's now become kind of prevalent, and this Court has seen it in Stringer where they start out, looks like it's a civil case, but in fact and in truth, they're building evidence for a criminal case. When did your client invoke the Fifth Amendment? Pardon me? When did your client invoke the Fifth Amendment? He invoked the Fifth Amendment in a series of questions along the way. In particular, that's involved in this case. Let me be more specific. Is it your position that your client invoked the Fifth Amendment in response to the initial summons? He did that, yes. But the contempt, which is the essence of the problem here, he invoked the Fifth Amendment when the district judge said, you can cure what apparently is the inability to get records, the present inability. I want to know, explain the manna from heaven. How did you get that? And that is an incriminatory question given the circumstances. And when he refused and took the Fifth Amendment, the contempt was entered and he was incarcerated and a fine was imposed. So to answer your complex question, Your Honor, the Fifth Amendment was asserted along the way. So why do you think that the district court erred in assuming that you were asserting a broad Fifth Amendment objection when you say, as you did today, that the objection was made in the 07 case? The objection was made in the 07 case as well as the contempt proceeding in the 08 case. The problem is specific. When the taxpayer appellant, in response to the manna from heaven question, entered the Fifth Amendment assertion, the district judge said, all right, you're in contempt and you're going to jail. So crystal clear, simple, is can someone exercise their Fifth Amendment privilege and be held in contempt for exercising that Fifth Amendment privilege? Because as I understand the record here, the court did not believe, the district court, did not believe that the Fifth Amendment could be asserted and, in particular, could not be asserted when the question was asked, explain the manna from heaven. How did that come about? And so our position is, looking at the totality of the circumstances, this Court should indicate to the public and to that, if you exercise your constitutional privilege, you're not going to be found in contempt. If the judge ---- So is your position that, with respect to the Fifth Amendment, that he asserted his Fifth Amendment right and, therefore, he demonstrated that he didn't have the ability to comply? Yes. Is that your argument? He couldn't comply. And in addition, Your Honor, the court had placed that phone call to Mr. Chafe, who indicated he was in control, Mr. Liddell was not, and he was not going to give any more information. That's kind of a unique proceeding, but Mr. Chafe ----  Chafe? Colin Chafe, C-H-A-F-E. He wasn't under oath, was he? Pardon me? He wasn't under oath, was he? He was not under oath, and the district judge, Sui Sponte, placed that call in open court, and everyone in the courtroom could hear the questions and the answers. And he answered, I'm not going to cooperate and I'm not going to give you any more information, and Mr. Chafe is not in control. I mean, excuse me, Mr. Liddell is not in control. So what I'm saying to you, given the totality of the circumstances, thereafter, after that phone call was placed, ended, and the question was put about the manor from heaven, Mr. Liddell would answer some more questions, but when it got to that question and the rest of the summons, that was outside the summons, and that suggested an incriminatory possibility, an incriminatory answer, because we're talking about foreign accounts. I think this is an important case to point out that the government, if it's going to deal in this kind of civil criminal proceeding, has to be honest, has to be transparent, has to tell it to the, you know, the citizen, look, here's what we're doing. And then the citizen can exercise intelligent actions. Your Honor, I'd like to reserve any further time for a response. Thank you. Thank you, counsel. May it please the Court. My name is Carol Barthel. I represent the United States in this appeal. The district court's order enforcing the summons was not clearly erroneous. The court did not clearly err in finding that Mr. Liddell had not disproved the government's prima facie case under Powell. The government's burden is a very slight one. It must only prove through the revenue agent's declaration that the investigation is for a proper purpose, in this case determining Mr. Liddell's tax liabilities for the two years at issue, that the information was relevant and not already in the government's possession, that proper administrative steps had been followed. It must also, through the declaration, show that there had been no criminal referral made to the Department of Justice with respect to those tax years. And the revenue agent's declaration stated all those things. And Mr. Liddell failed to bear his heavy burden of making any rebuttal. As the district court found, and it's not clearly erroneous, he failed to show that there was any sort of criminal investigation going on that would go to the impropriety of the purpose of the summons. Let's assume that the summonses were properly issued and the district court wasn't clearly erroneous in making that determination. So I just want to have a better understanding of kind of what happened. So the district court ordered Mr. Liddell to meet with the IRS agent? Yes. Well, the order enforcing the summons came down in August of 2007. The court, upon rehearing, the court said, well, there is this civil injunctive action going on. That will require discovery. We don't want to have conflicted discovery dates here. Produce at the discovery time for that action. The discovery date was in October. Okay. No production. In January of 2008, the IRS sent a letter to Mr. Liddell saying a couple of weeks, bring the documents. Mr. Liddell moved to stay at that point the summons enforcement order five months after it had been issued. The district court denied the stay. This court denied the stay. So they appeared at the time and produced no documents. Was there any attempt at that time to invoke the fifth? The only time, as I understand it, he first invoked the fifth in the summons enforcement proceeding before the summons enforcement order. There was a blanket invocation of the fifth. We intend to stand on our Fifth Amendment rights. And that was it. I would say that it was just a blanket assertion without referring to any particular document production or any particular question that they would make. There was no question by question assertion? No, there was not. And there was no offer of a privilege log, no offer for in camera inspection of documents. It was just a simple blanket assertion of the Fifth Amendment. And then what? You sought contempt? Beg your pardon? Yes. You then sought contempt? Not because of the Fifth Amendment, but because the enforcement order had not been complied with. Right. That's what I meant. I'm sorry. Yes. And, in fact, it had not been complied with. Nothing had been produced. The first production that occurred was after Mr. Liddell was threatened with incarceration. And then all of a sudden, some documents from Hallmark Trust with respect to card number 0708 were produced. Mr. Chafe came through with those. That was only a partial production of the request with respect to that particular card. That production and one credit card application with respect to that card are the only things that have to date been produced. Mr. Liddell's attorneys have the Butterfield Bank documents, which, again, were just partial. It wasn't fully. But they have not produced this. Did the district court order Mr. Liddell to meet with the IRS agent? Yes. And he did. And did he invoke the Fifth? He did. He invoked the Fifth as to if we don't have the transcript, but we do have the district court reading bits of it. Right. He invoked the Fifth with respect to how many times have you met with Mr. Chafe, how many times have you asked him for these documents, did you e-mail so-and-so about the documents. That sort of question, he invoked the Fifth. The court reading that said, this is contempt. Did she go through and ask whether or not any of those questions would tend to answer and analyze whether this is? She had, in open court, she had the government attorney and she herself asked these questions again. And he provided answers that she found to be incomplete and evasive. She found his demeanor was incredible and his answers were incredible. This is where we get the manna from heaven quote. He was using credit cards. He didn't buy jewelry with them. He didn't know how or who was covering the cost for these cards. He claimed to have tried to go online. The IRS agent had indicated that there were websites whereby cardholders could obtain account information. He said, well, I went online and I went to the new account phase screen and I put in my account number and it wouldn't accept it. There was a screen for old account holders where you put in your user name and your password. He says he didn't know his password. There was a password prompt on that page. There were also numbers you could call if you were having problems. So this is one of the questions that was asked of him? What was your password prompt? Yes. Well, why didn't he do that? Well, he wasn't going to answer that question. He was evasive as to why he couldn't get them online. When she asked him, well, tell me why don't you have information that you could reasonably be expected to have, like how are your payments being covered, where are these documents, to that sort of question he evoked the Fifth, Your Honor. And she found that he was in continued contempt because at that point his ---- Right. What concerns me a little bit is the question of whether or not there's a specific enough analysis of the Fifth Amendment assertion on a question-by-question basis. And I understand your position, which is he evoked a blanket Fifth from the beginning and the district court seems to have adopted that. Now, in his brief and the hearing, he seems to have adopted a question-by-question approach, which may require a different analysis on the part of the district court. How do you deal with that issue? A, in fact, any Fifth Amendment privilege was waived, as you suggest. That is part of it. But even if he could have at that point, the only question that was being presented was on the ---- at the contempt phase is presentability to produce. And under the Rylander case referred to in this Court's opinion in Brown, you cannot use a Fifth Amendment privilege as a sword to serve the purpose of bearing your burden, of showing that you have made all reasonable efforts to produce. And that is precisely what ---- But aren't there two separate inquiries? That is, he can assert the Fifth to certain questions, like Judge Thomas is saying, but the fact that he asserts the Fifth and assuming that it's a proper assertion of the Fifth to the particular question, that doesn't satisfy his ---- Precisely. His inability to comply. He has not borne his burden of showing that he can't comply by invoking the Fifth. But isn't he entitled to assert the Fifth? Of course. But it means that he has not complied with the requirement that he show a present inability. Well, there might be other information he might have. I'm sorry? There might be other information he might have. They might very well be. Once it's all sorted out as to which questions he will not answer by invoking the Fifth, there might be other information that he could ---- It's possible. I mean, I don't know what, but it's possible that he could present some information that would persuade the district court, was outside the scope of the Fifth, but yet might persuade the district court that he doesn't have the ability to comply. He did not present any such information, however. All the documents were burned in a fire or something. He did not offer anything. He said, well, I contacted Colin Schaaf, and Colin Schaaf contacted Hallmark Trust, and Hallmark Trust contacted Pacific Ocean, and Pacific Ocean contacted Colony Mortgage. And the court was not convinced that by what he said that he had explained why he couldn't produce documents. Why isn't this case sort of somewhat like Drollinger? In cases like Drollinger, you have someone who really didn't have the opportunity at the summons enforcement stage, through their own fault or otherwise, to answer questions. Here, they were there. They could have produced documents to the court and said, you know, the act of production will tend to incriminate us on a document-by-document basis. Let me ask you, is every summons that's issued by the IRS for tax purposes, does it require the taxpayer to show up to answer questions and produce documents? You know, a summons for an examination and production of documents? This one, she was looking for the documents first so that she could then ---- What did the summons in here require Mr. ---- what's his name? Liddell. Liddell to do? It required him to produce documents within his possession, custody or control. Did it require him to show up and also ---- With the documents. But did it also require him to sit for an examination with the IRS agent? The IRS agent was going to look at the documents and ask him questions about the documents. It wasn't just enough for him to show up with the documents and then say adios? Well, he didn't do that. Could he have done that under the summons? No. He would have had to ---- the summons required that he show up with the documents and answer questions with respect to the documents. So was it a summons for an examination and ---- Well, it was for not an examination in the sense of an audit, but an examination of the documents. Is that what the summons says? Yes. It says what? Was he required to stay there and answer questions about the documents? The summons requested that he show up at the IRS offices with the documents. With these documents? With these documents and tell her about them. IRS summonses, there are two types generally. This one was with respect to liability, tax liability, income taxes for those two years. You can also have summonses for other purposes, such as where the liability has already been found and you haven't paid and where they're looking for assets and things like that. But this was just to find out what the liability is. Here he had what appeared to be unreported income for those two years by way of the offshore credit card scheme. And the IRS, having subsequently shut down the scheme, were still trying to find out what he gained from it. And that is the purpose of the summons at issue here. How do you think he should have invoked his Fifth Amendment rights at the summons stage? At the summons phase, he should have presented the documents within his position, custody and control at the office, as he was requested to do, and either present the documents or raise a Fifth Amendment objection to the production of them on a document-by-document basis. So your objection to the way that this particular defendant handled it in this case is that he made a blanket assertion from the beginning in the summons phase and not a document-by-document assertion? If he was going to evoke the Fifth, that was the way in which it would have been proper for him to do so, as this Court has recognized in the Brown case and others. What would have been proper for him to do? I'm sorry? You said that would have been proper. What would have been proper? To have presented himself with the documents at the IRS in response to the summons. And if he was going to evoke the Fifth Amendment with respect to the production of a particular document, he would have had to do it by that particular document. And if the IRS still was going to seek enforcement, then he should have gone to the Court and said, I will make a proffer in camera of showing you how this production of this particular document will tend to incriminate me for the following reasons. And instead of that, he did what? He said at the summons enforcement stage, we intend to rely on the Fifth Amendment, period, and made no offer. That was his obligation to go to district court. Well, no. When the IRS sought to enforce the summons, if the IRS was not satisfied, then at the court level, he was required to make a document-by-document proffer. He did not make an offer to a document-by-document. You said in answering Judge Thomas' question, or maybe Judge Reinhart, that what he should have done was to show up at the IRS office, produce the documents, right? And if he was going to assert the Fifth, to do it on a, I guess, provide a ledger sheet saying which documents he was objecting to. So he has to produce the documents. He has to produce the document and also object on the Fifth Amendment? At least to bring them with him and say I have these documents, but I object to producing the following documents because. Here's the documents that I'm not giving them to you because I believe that my production is protected by the Fifth Amendment. He didn't do anything even remotely resembling that. No. I'm trying to figure out what he should have done. I'm not sure. I would have to say I'm not sure exactly what the procedure would have been before the IRS representative. But certainly at the court level. Okay. So he should have done this when the IRS moved to enforce the summons? When the IRS brought this case to enforce the summons, and if he was going to resist complying on the basis of his Fifth Amendment privilege, he should have offered to the court, and his attorney knew this. Ms. Panagakos said I know how to put a privilege log together. I know how to do an in-camera presentation. That's what we'll do. But it never happened. The documents still have not been produced. Okay. My time, I see, has expired. Thank you very much. Yes. Your Honor, in the remaining time, I would like to say the excerpt of the record may be helpful to the Court, because in that excerpt of the record are the transcripts of the proceedings in April of 2008 and May of 2008. And in that, there is where I get the date, but those proceedings were in the district court? Yes, Your Honor. And they were the enforcement proceedings? Yes. At that point, it was the order to show cause why Mr. Liddell should not be held in contempt. So you're talking about the contempt case? Correct. And what happened at the enforcement proceedings? At the enforcement proceedings, I believe Ms. Panagakos made an assertion of what documents could be privileged, but I then think that the clarification came because a number of documents and evidence were submitted, and there were few that were not involved. As I understand it, the outstanding documents are the documents from Butterfield Bank, not Hallmark, but the Colonial Mortgage. And the IRS as an institution, because of other cases, knows that there's no loan applications. That wasn't a technique. So I think the clarification came in April of 2008, where all the transcripts, I believe, are in the excerpt. And I believe that Mr. Liddell, pro se, early on, attempted to indicate he was going to assert the Fifth Amendment, and I believe that the record will show he didn't have an opportunity to assert it on a question-by-question basis until he got to the court. Well, you know, I find this all odd, because when I asked you first, when did he assert the Fifth Amendment, and you said with the summons. In your reply brief, you say, no, no, he never meant to assert the Fifth Amendment in the summons. That's premature. He was just announcing his intent to. So did he assert a blanket Fifth Amendment objection in response to the summons or not? At the beginning, he said what I said in the brief, that he intended to assert the Fifth. Was that an assertion of the Fifth Amendment in response to the IRS summons or not? I believe in his pro se status, that was an attempt to assert the Fifth Amendment. Okay. But it should have been on a question. Why was the district judge unreasonable then in assuming that he was asserting a blanket Fifth Amendment privilege in response to the request for the documents? Because he never had an opportunity to go question-by-question as a. . . Right.  Well, the analysis. . . Go ahead. I'm sorry. No, no. I didn't mean to interrupt you. The analysis that needs to be applied here is what happened, in my judgment, in April of 2008, where by that time, the summons had already been issued. Assuming arguendo, it's a valid summons or summonses, the information had been supplied. And the only outstanding items, as I understand it, are the colony and the Butterfield Bank. And then when Mr. Chafe was called by the district judge, things cleared up. Mr. Liddell was not in control. He wasn't going to give any more information. He couldn't get any more. And then he answered questions. The district judge ordered him to meet with the IRS. He met with the IRS. He asserted. . . he gave them answers, then asserted the Fifth Amendment on a question-by-question basis that were appropriate to be asserted. And when he came back to court, he then asserted, answered the questions to the district judge and got down to the manner-from-heaven question, where he asserted the Fifth Amendment. And then at that point, and you can see it in the transcript that's in the excerpt, the judge, district judge said, okay, you asserted the Fifth Amendment. I think it's inappropriate. I'm going to hold you in contempt and incarcerate you. So you've got to look at the totality of the circumstances. Right, but I mean, from the district court's point of view, he'd already asserted a blank, made a blank assertion. Your criticism under Drollinger is she didn't make a question-by-question analysis. As we look at it on review, why do we assume the district – why wasn't that a correct assumption for the district court to make? Because given the totality of the facts and given the fact that the district judge had, on her own, called up Colin Chafe, she knew that the summons, if you consider them valid, were already complied with, and the only outstanding questions were certain questions that were incriminatory. I think that by interspersing herself into the procedure, taking on the role of maybe the U.S. government, she changed the whole nature of everything. So you can look at it that the summons was complied with by the information and a specific assertion of the Fifth Amendment on a question-by-question basis. And I gather, if this case is remanded, you're still going to assert the Fifth Amendment in response to these specific questions. Yes, Your Honor, given the totality of the circumstances, given the notice of deficiency that was issued, and given the complaint that was filed in the injunction suit and the allegations, even looking at the brief of the government, I believe footnotes at the page 6, footnote 3, page 7, footnote 4 indicate that this is a transparent criminal case. This is a parallel proceeding. This is the same kind of issue that this Court grappled with in Stringer, although that was an SEC case. And I think for that reason, this is a kind of an important issue currently. Are we going to be honest and straightforward in dealing with the citizen? The government may have the right to go both ways, civil and criminal. But we also have the right to know what's going on so we can intelligently exercise the constitutional rights that are given in this country, which makes it a great country. Thank you. We'll end on that wonderful patriotic note. Thank you. The case just argued will be submitted. The Court will stand in recess for the day.
judges: Reinhardt, Thomas, Paez